CHARLES PRICE, Adm'r, v. JAMES JOHNSON and others.

*Wills, defeasible estate, when it becomes absolute.*

1. Where an estate is defeasible and no time fixed in the will for it to become absolute, the time of the devisor's death will be adopted, in preference to that of the devisee, unless there be words to forbid it.

2. But, if there be an intermediate period between the death of the devisor and devisee to which the contingency can have reference, then the intermediate period must be adopted.

3. *Therefore,* where the will provides that John, upon his arriving at the age of twenty-five years, "can take possession of the estate and do with it as he pleases," but if he die without issue, then to be limited over, and he attains the said age and dies without issue; *Held,* that the intermediate period to be adopted is his attaining the age of twenty-five years. After that event, the estate in John became absolute, and the contingency of

dying without issue not happening before that time, the limitation over cannot take effect.

(*Hilliard* v. *Kearney*, Busb. Eq., 221; *Davis* v. *Parker*, 69 N. C., 271; *Webb* v. *Weeks*, 3 Jones, 279; *Biddle* v. *Hoyt*, 1 Jones' Eq., 159; *Vass* v. *Freeman*, 3 Jones' Eq., 221; *Burton* v. *Conigland*, 82 N. C., 99; *Murchison* v. *Whitted*, 87 N. C., 465, cited and approved).

SPECIAL PROCEEDING to sell land for assets, commenced before the clerk, and heard at Spring Term, 1883, of ROWAN Superior Court, before *Graves*, J.

This proceeding was instituted by the plaintiff as administrator of John N. B. Johnson against the heirs and devisees of John I. Shaver, for the sale of the land described in the petition as belonging to his intestate, to make the same assets to pay the intestate's debts.

A jury trial was waived, and the parties submitted a "case agreed" to the court, the facts being as follows:

1. John I. Shaver died in 1873, having made a last will and testament which was duly admitted to probate, the material parts of which, as applicable to this case, are: "Item first: I give and bequeath to John Johnson, son of Harriet Johnson, the Powe plantation, near three hundred acres, being the land I bought from Dr. A. T. Powe and Hugh Powe's estate. I also give him twenty shares of North Carolina railroad stock to hold and draw the dividends until he is twenty-five years of age. He is not to sell or lease it until that time, and then he can take possession of it and do with it as he pleases. Item second: I give and bequeath to Frederick Johnson, son of Harriet Johnson, the small brick house near Mr. Shober's, and the lot around it, that part I sold once to Banston and had to take it back. I also give him twenty-five shares of railroad stock in the North Carolina railroad to draw dividends until he is twenty-five years of age. He is not to sell or lease it, or have control of it until that time, except dividends, and then he can take it and do with it as he pleases. If John dies before he has a lawful heir, his property that I have bequeathed to him, I want it

38

to go to his brother Frederick and his sister Victoria, equally divided. If Frederick dies before he has a lawful heir, I want his to go to his brother John and his sister Victoria, equally divided."

2. John N. B. Johnson, the intestate of plaintiff, is the John Johnson, and Victoria Johnson and James Johnson are the parties, named in the will; and all of them as well as Frederick Johnson (who died after the death of the testator Shaver, and before he became twenty-five years of age, and before the death of the plaintiff's intestate), were infants at the time of making the will and at the death of the testator.

3. At the time of the testator's death the plaintiff's intestate was about sixteen years of age, and was then, as well as at the time of making the will, of extravagant habits for one of his age; and the said James, Frederick and Victoria were the younger brothers and sister of the said intestate, and Adolphus Johnson and Samuel Johnson were his younger brothers not mentioned in the will.

4. Plaintiff's intestate arrived at the age of twenty-five years, and in two or three days thereafter died without having had issue, and without ever having actually received in possession the *corpus* of the personal estate bequeathed to him, or without having attempted to dispose of the property after arriving at said age.

5. After arriving at twenty-one but before arriving at twenty-five years of age, the intestate did attempt to mortgage the real estate to secure the sum of $1,442, borrowed money, and signed and sealed a deed accordingly.

6. Frederick Johnson died intestate without having been married.

7. The indebtedness of the plaintiff's intestate, at the time of his death, amounted to the sum of $2,342, of which $1,100 was for necessaries supplied after he was twenty-one years of age, and $1,442 for borrowed money as aforesaid, contracted after he was twenty-one years of age.

8. The plaintiff's intestate made no debts after arriving at the age of twenty-five, except doctor's bills.

The plaintiff contends that his intestate John Johnson became entitled to an absolute estate under the will, having reached the age of twenty-five years before his decease; and the defendants contend that upon the death of John without issue, the property devised and bequeathed to him became vested either wholly in the defendant Victoria, or that one-half thereof became vested in her as executory devisee and legatee under the will, and the other half vested in the defendants, as to the real estate, as heirs-at-law of Frederick Johnson, and as to the personal estate, as next of kin (in conjunction with Harriet E. Johnson, the mother of Frederick and the defendants) of said Frederick.

It is further agreed that the said John died without being possessed or seized of any property other than that mentioned in the will and the petition, and that the railroad stock is sufficient to pay the debts described as for necessaries, but not sufficient to pay both that and the mortgage debt aforesaid.

If the court should be of opinion with plaintiff, a decree of sale is to be entered; otherwise, judgment to be given dismissing petition with costs.

The court being of opinion with plaintiff, adjudged that he be appointed commissioner to sell the land for assets, and the defendants appealed.

*Mr. Kerr Craige,* for plaintiff.
*Messrs. J. W. Mauney, Lee S. Overman* and *Fuller & Snow,* for defendants.

ASHE, J. The first and most important rule in the interpretation of wills, to which all other rules must yield, is, that the intention of the testator expressed in his will shall prevail, provided it be not inconsistent with the rules of law. 1 Blk. Rep., 672. A will is defined to be "the legal declaration of a man's intentions which he wills to be performed after his death." 2

Blk. Com., 499. These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law.

In this case, it is impossible to mistake the intention of the testator. He unquestionably intended that the land devised to John N. B. Johnson should vest in him absolutely, upon his attaining the age of twenty-five years; and it was also his intention that, if John died without lawful issue, the land should go to his brother Frederick and his sister Victoria. But as the testator failed to declare his intention as to the time when the contingency of dying without issue must happen, upon which the limitation over was to take effect, we must necessarily look to the context of the will, and resort to the rules of construction which have been established by judicial decisions.

It is a rule of construction that the whole will is to be considered together, and every part of it made to have effect, so as to effectuate the intention of the testator ; and if there are any apparent inconsistencies in its provisions, it is the duty of the court to reconcile them if possible.

The testator wills that if John Johnson should die without an heir, that is, by virtue of our statute, without issue, then the land is to go to Frederick and Victoria. If this were all, the estate vested in John absolutely upon his surviving the testator. *Hilliard* v. *Kearney*, Busb. Eq., 221. In that case, it was held, when the estate was defeasible and no time is fixed for it to become absolute, and the alternative is either to adopt the time of the death of the devisor or that of the devisee, the former will be adopted, unless there be words to forbid it, or some consideration to turn the scale in favor of the latter. But if there be an intermediate period between the death of the devisor and that of the devisee, to which the contingency can have reference, then that must be adopted. The decision in that case has been cited with approval in the following cases: *Davis* v. *Parker,* 69 N. C., 271; *Webb* v. *Weeks,* 3 Jones, 279; *Biddle* v. *Hoyt,* 1 Jones' Eq., 159; *Vass* v. *Freeman,* 3 Jones' Eq., 221; *Bur-*

*ton* v. *Conigland,* 82 N. C., 99; *Murchison* v. *Whitted,* 87 N. C., 465.

Here, the testator, while he wills that upon the death of John without issue the estate devised to him shall go over to his brother Frederick and his sister Victoria, expressly declares that John, upon arriving at twenty-five years of age, " can take possession of the estate and do with it as he pleases." That is the time when his estate was to become absolute; and consequently it must be intended that the contingency upon which the limitation over was to take effect must happen before that event. So that, whether the will is susceptible of the construction that the contingency is referable to the death of the testator, or to the attainment of John to the age of twenty-five years—and it must be the one or the other—in either case, the estate of John was absolute at his death, and the defendants acquired no interest in the land devised to him, upon his death.

There is no error. This must be certified to the superior court of Rowan county, that the case may be proceeded with according to law and in conformity to this opinion.

No error.  Affirmed.