WHITFIELD v. GARRIS.

(Filed December 8, 1903).

WILLS—*Construction*—*Descent and Distribution*—*Legacies and Devises*—*The Code, secs. 2180, 1325.*

Where a testator devises realty to a grandson, and in the event of the death of the grandson without children, then the realty to descend to other grandchildren, such devise vests a fee-simple estate in the first devisee, defeasible only on condition that he dies without leaving heirs of his body.

PETITION to rehear this case, reported in 131 N. C., 148. Petition denied.

*W. C. Munroe* and *F. A. Woodard,* for the petitioner.
*F. A. Daniels* and *W. T. Dortch,* in opposition.

WALKER, J. This is a petition to rehear the above entitled case, which was decided by this Court at August Term, 1902, and is reported in 131 N. C., 148.

The action was brought to recover real property. The plaintiffs, who are the heirs at law of Franklin Whitfield,

claim the land under the fifteenth item of the will of Lewis Whitfield, grandfather of Franklin, who died in 1850. By that item the land, which is described in the complaint, is devised "to Franklin Whitfield, son of L. S. Whitfield, and in the event of the death of the said Franklin Whitfield, leaving no heirs of his own body, the land to descend to the three sons of L. S. Whitfield or the survivor of them, and in case the last survivor of the sons of L. S. Whitfield, deceased, should die leaving no heirs of his own body, the said land to be equally divided between all of the grandsons of the testator." One of the defendants alleges that Franklin Whitfield conveyed a part of the land to him in fee with warranty, and the other defendants allege that he conveyed the residue in fee with warranty to John W. Isler, under whom some of them claim by descent and others by actual purchase. There was no dispute as to these facts.

It will be seen, therefore, that a determination of the controversy requires a construction of the fifteenth item of Lewis Whitfield's will. The contention of the plaintiffs is that by that item of the will an estate for his life only was given to Franklin Whitfield and by implication the fee was given to his children in remainder, if he left any. The defendants, on the contrary, contend that by the will Franklin Whitfield was given an estate in fee determinable upon his dying without issue of his body, or children, which is the same thing under our statute; and that while his deeds did not convey an indefeasible title to the land at the time they were executed, as he afterwards died leaving heirs of his body, or children, the estate conveyed by the deeds, which was theretofore contingent, thereby became absolute and indefeasible, and this Court so decided at the last hearing. We are not disposed, after a full and careful reconsideration of the question and a thorough examination of all the authorities upon which the plaintiffs rely, to reverse that decision, because we regard it

as correct and in strict accordance with former decisions of this Court and the general and well established principles of law. The cases cited by the plaintiffs, when rightly considered, do not, we think, conflict with the conclusion thus reached, with perhaps one or two exceptions, which, if they cannot be explained or distinguished by their special facts or circumstances, are opposed to the great weight of authority. It is not insisted that there is any express provision of the will by virtue of which the plaintiffs can claim the testator intended that if Franklin Whitfield left children they should take the land as purchasers under the will, and not by descent from their father, if he should not dispose of the same, but the argument is that the very terms of the will signify an intention on his part to confine the operation of the devise to the life of Franklin Whitfield and to give a remainder in fee to his children, if he should have any, and if he died without leaving children then over to the persons named alternatively as beneficiaries under the ulterior devise, and that thus a gift by implication, or by construction, as it is sometimes called, is raised in favor of the children by way of remainder or as purchasers under the will.

. In order to induce us to adopt their view the plaintiffs must make out a very strong case. "It is a well-known maxim," says Jarman in his work on Wills, "that an heir at law can only be disinherited by express devise or necessary implication, and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed." 2 Jarman on Wills (5 Am. Ed. by R. & T.), 112; *Post v. Hover,* 33 N. Y., 599. It is also said that an estate by devise may pass by implication without express words to direct its course, but where an implication is allowed it must be raised as a necessary, or at least a highly probable, and not merely a possible implication. The general policy of the law and the leaning of the courts are against the doctrine of

implied estates under such devises and have tended rather to limit than to extend it. *Halton v. White*, 23 N. J., 330. *Lord Mansfield* in referring to this subject said that "necessary implication is that which leaves no room to doubt. It is not an implication upon conjecture; you are not to conjecture what he would have done in an event the testator never thought of; that will not do." In *Jones v. Morton*, reported in 1 Fearne on Rem. (Appendix), 590, *Lord Eldon*, discussing the same proposition, said: "With regard to that expression, 'necessary implication,' I will repeat what I have before stated, that, in construing a will, conjectures must not be taken for implication; but necessary implication means not natural necessity, but so strong a probability of intention that an intention contrary to that which is imputed to the testator cannot be supposed." *Williamson v. Adams*, 1 V. & B. Ch. Rep., 465; *Nickerson v. Bowly*, 8 Metc., 431; *Rathbone v. Dyckman*, 3 Page, 28.

It is provided by our statute that when real estate shall be devised to any person, the same shall be held and construed to be a devise in fee-simple, unless such devise shall in plain and express words show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity. The Code, section 2180. By force of this statute, which is the Act of 1784, Franklin Whitfield took an estate in fee, unless it was "plainly intended" by the testator that he should have a less estate. It surely cannot be contended by the plaintiffs that it appears "in plain and express words" the testator intended that he should not have an estate in fee-simple or that he should have only a life-estate. We have found no expression in the will, nor can we discern therefrom any intention of the testator, which precludes the construction the statute places upon its words or which prevents the full operation of the statute in vesting a fee when inheritable words are not used. The plain-

tiffs encounter not only the strong leaning of the law against their construction, but also the positive requirement of the statute that the devise shall be held to be in fee unless the testator plainly intended by his will that an estate of less dignity should pass to the beneficiary. An intention contrary to that implied by the statute must be gathered from the will, and the burden, of course, is upon the plaintiff to show that it exists. Instead of there being any evidence of such an intention in the will, we think that the terms of the devise plainly evince the purpose of the testator to have been to vest in Franklin Whitfield an estate in fee; or, at all events, the limitation that, if he died without heirs of his body, the property should go over to the ulterior heirs' devisees, does not rebut the intendment of the statute. The devisor must be presumed to have known the law which was in force at the time his will was written, and, acting upon this presumption, there must be inserted in the will the provision of the statute, so that it will read: "I devise to my grandson, Franklin Whitfield and his heirs that part of my lands," etc. He thereby acquired a fee-simple estate, unless the words "in the event of his death, leaving no heirs of his body," are sufficient to restrict the estate devised to one of less duration than a fee, or, in other words, to a life-estate, and thereby prevent the insertion of inheritable words in the devise. Why should we assume that the testator was ignorant of the law, and therefore intended, by his failure to use words of inheritance, to devise only a life-estate? Is not the provision for the estate to go over in the event of his death without heirs of his body fully explained and the intention executed by allowing his surviving children to take as heirs, that is, by descent from him; and is not this construction perfectly consistent and in harmony with the requirement of the statute that inheritable words shall not be necessary to create an estate in fee-simple by will? But suppose that, as he has used

the words "in the event of his death, leaving no heirs of his body," he intended to devise the land to his grandson, Franklin Whitfield, and the heirs of his body, and that such a devise is to be clearly implied from the very language of this item of the will, then by virtue of the statute (Acts of 1784, chapter 304; The Code, section 1325) the estate so created must be deemed and held to be a fee-simple. *Ward v. Jones*, 40 N. C., 400; *Jones v. Spaight*, 4 N. C., 158; *Bird v. Gilliam*, 121 N. C., 326; *Buchanan v. Buchanan*, 99 N. C., 308. So that whatever view is taken of it, whether the will is construed with reference to what is said in section 1325 of The Code (Act of 1784, chapter 204, section 5), or section 2180 (Act of 1784, chapter 204, section 12), we will reach the same result. The idea that Franklin Whitfield took a fee, and that his heirs, but for his conveyance of the land, would have taken, not as purchasers, but by descent from him or as his heirs, explains several of the cases cited by the plaintiffs' counsel in his brief; for where in the cases it is said that the reason for using the words "dying without issue or without having issue or heirs of the body," in devises of land, is "because they are supposed to be inserted in favor of the issue, that they may have it," we think the courts merely meant that the issue shall take as heirs, that is, by descent and not by purchase, and the cases cited by the plaintiffs' counsel can be reconciled in that way with those which we consider as constituting the great weight of authority upon this question and which hold that a fee-simple estate is devised, subject to be defeated by the happening of the contingency, and, in the latter event it will vest in the ulterior devisees under the terms of the will.

We will now examine some of the authorities which we think bear directly upon the question as to the true construction of this item of the will.

It is said in Underhill on Wills, section 468: "Where real

WHITFIELD *v.* GARRIS.

or personal property is given to a person absolutely, but if he should die without leaving children then over, the primary devisee takes a common law fee conditional, which is defeasible on his death without leaving children, though the children, if he leave any, take no estate as purchasers under the will by implication. If the first taker shall die leaving children him surviving, by which event the remainder is defeated, they will take by descent from their parent and not as purchasers under the will. He has an estate in fee with full power of disposal, and the only effect of mentioning the children in the will is to indicate the contingency upon which his estate in fee is to be defeated."

The case of *Hilliard v. Kearney,* 45 N. C., 221, is, when properly considered with reference to the facts of that case and the facts of the case now under consideration, an authority for the position that Franklin Whitfield took a fee-simple. It is true, as contended by the plaintiffs' counsel, that in *Hilliard v. Kearney* the particular question presented was as to the time when the estate would become absolute in the first taker, but the principle upon which the decision is based is necessarily involved in this case. It would have been idle for the Court to have attempted to fix the time when a life estate would become absolute. The very question under discussion necessarily presupposed that the estate was a fee-simple, which was defeasible upon the happening of a certain event. In that case the same words substantially were used in the will as were found in the will of Lewis Whitfield, namely: "If either of them should die without an heir" her share to go over. *Pearson, C. J.,* refers to this question, and says it is not for the benefit of the children of any daughter who may die leaving children, "for there is no limitation over to them." And again: "There are no words showing an intention to give a preference to such of the daughters as died leaving children, except to the extent of making the shares

absolute at their death." He puts this case: "A gift to A, but in case he dies leaving a child, then to such child, and if he dies without leaving a child, then to B," and then says that the estate thus devised became absolute at the death of the testator. Why should this have been so with reference to any estate except a fee? That A was given an absolute life-estate, that is, one free from any conditions or contingencies, must be conceded without argument, and the Chief Justice was manifestly referring to the fee with the view of deciding when the defeasibility of the estate would cease, and upon the policy of the law which favors the unrestricted enjoyment and right to dispose of property, he adopted the earliest time for its vesting absolutely. The case of *Hilliard v. Kearney* would never have been presented for decision except upon the assumption that the daughters by the very terms of the will took a fee, although no words of inheritance were used, the fee so taken by them being determinable upon the death of any one of the daughters without leaving issue. To the same effect are *Murchison v. Whitled*, 87 N. C., 465, and *Camp v. Smith*, 68 N. C., 539.

In *Sadler v. Wilson*, 40 N. C., 296, the devise was to the testator's ten children, and if any of them died before having lawful heirs of his or her body then over to the survivors of them. It was held that each of the children took a fee defeasible upon his or her dying without having a child, and that upon the birth of a child the fee became absolute in its parent. How could this be the law if the plaintiffs' contention in this case is correct? In *Taylor v. Maris*, 90 N. C., 619, where the devise was precisely like the one in the last stated case, the Court held that "upon the death of the testator the devisees became seized as tenants in common in fee defeasible upon the death of one of them without issue."

We will now advert to some of the cases in which an estate in common was not devised, but an estate in severalty given

to the first taker, and these cases we are utterly unable to dis-
tinguish from the one under consideration.

In *Burton v. Conigland*, 82 N. C., 99, the devise was to
the testator's nephew, John Ponton, and should he die leaving
no issue, then the land to go to his brothers and sisters,
William Ponton and others; and should they die leaving no
child, then to go to the testator's brother, Henry Doggett.
John Ponton conveyed the land in fee, with full covenants of
warranty and seizin, to W. B. Pope, and this Court held,
affirming the judgment of the Court below, that John Ponton
took an estate in fee and that the purchaser acquired a good
title. To the same effect is *Price v. Johnson*, 90 N. C., 592.
The other questions discussed by the Court in those cases are
not material in this connection and do not prevent them from
being authorities in this case or weaken the assumption upon
which they rest. It is sufficient to say that they could not
possibly have been decided as they were unless by the words
of the wills, which were under construction and which are the
same in substance and legal effect as those in the will now
being construed, a defeasible fee was devised.

In the case of *Baird v. Winslead*, 123 N. C., 181, we have
almost a perfect analogy to this case. It appeared in that
case that the land was devised to Thomas Baird, with a limita-
tion that if he died without leaving issue it should go to his
brothers equally, subject to the use of the same by his widow
during her life. The widow was not entitled to dower, as a
matter of right, because the land was acquired by her husband,
Thomas Baird, under the will before 1868, and was sold
under a decree of the Bankrupt Court and conveyed by the
assignee in Thomas Baird's life-time. The Court held that
the estate of Thomas Baird was "absolute unless defeated
by his dying without issue, and only, if thus defeated, did the
reservation to the widow take effect." If he died leaving
issue "it was evidently contemplated that the estate should

go in the usual course, unless devised or sold by him, to his issue with the right of dower in his wife." The word "issue" is manifestly used here in the sense of the word "heirs," so that they took by descent and not by purchase, as the widow could not have had dower if his estate was only for life and his children took the fee in remainder at his death. Thomas Baird having died leaving children, the Court further held that the purchaser at the sale got a good title free from any right of dower in the widow who had brought suit to have the same allotted to her. Again, we say, it is indeed difficult to see why any question as to the right of dower could have been raised and decided if Thomas Baird did not have the fee, which became absolute and indefeasible by his dying and leaving issue or children. That case and this are in principle, if not in their essential facts, the same, and the rule of law must therefore apply to both of them.

In the case of *Trexler v. Holler,* 107 N. C., 617, the devise was to Louisa Holler, and if she died without lawful issue the property "to revert to the testator's estate and to be divided equally among the other legatees" named in the will. The action was brought for a construction of the will. Louisa Holler contended that she took an absolute estate in fee at the testator's death and the administrator that she took an estate in fee-simple defeasible upon her dying without issue. Neither party claimed, as do the plaintiffs claim in this case, that by the words of the will a life-estate merely was given. The Court held, in accordance with the administrator's contention, that she acquired an estate in fee which was determinable upon her dying without issue. In *Gibson v. Gibson,* 49 N. C., 425, and *Davis v. Parker,* 69 N. C., 271, this Court gave the same interpretation to devises similarly worded.

The learned counsel for the plaintiffs in his well prepared brief, which was supplemented by an able argument in this Court, referred us to the cases of *Carr v. Green,* 11 S. C., 88,

and *Wetter v. Cotton Press Co.,* 75 Ga., 540.   In the former case the will which was under consideration was given an interpretation by the Court of Law, different from that given by the Court of Equity, there being at the time the decision was made separate courts of final resort, one having jurisdiction of cases at law and the other jurisdiction of cases in equity.   When the Court of Appeals was established this conflict of decision was settled in favor of the construction that no estate was given by implication to the children when the devise was to a person, and, if he died leaving no issue, then over to the others, but that the estate devised to the first taker was a fee defeasible upon his dying without such issue. *Carr v. Porter,* 6 S. C. (Ch.), 36.   The Court, referring to language identical with that we are construing in this case, says: "An estate may be enlarged, controlled and even destroyed by implication; but the principle must be taken subject to certain other well-established rules, as that, where an instrument is reduced to writing, nothing is to be implied which does not arise upon the face of the writing.   An estate by implication cannot be raised in direct contradiction to and denial of an express estate.   An estate by implication can only arise by a necessary implication, and the necessity must appear on the face of the will.   Such implication is inadmissible when the provisions of the will can otherwise be carried into effect."   And again: "But it is said it is manifest that his limiting it over upon the failure of issue was intended as a benefit to the issue.   And so it was.   He had given an estate to their ancestors descendible to them and he did not intend to deprive them of that benefit.   He limited it over, therefore, upon the condition only that there should be no issue to take.   But he intended to leave it in the power of the father to dispose of it as he thought proper for their benefit, and not to give it to them immediately without leaving him any control over it."   This language was used with

reference to a devise to the testator's grandson of certain property to be delivered to him when he attained the age of twenty-one years, but should he die leaving no lawful issue, then and in that case the property to go to another named in the will.

The case of *Carr v. Porter,* which overruled the case of *Carr v. Green,* has never since been questioned, but on the contrary has been recognized as containing a correct statement of the law and has been followed in numerous cases. *Shaw v. Irvin,* 41 S. C., 209.

The second case cited and relied on by the plaintiffs' counsel (75 Ga., 540) came under review in the case of *Matthews v. Hudson,* 81 Ga., 120, 12 Am. St. Rep., 305, and the Court said in regard to it that it must stand as authority only upon the special facts and circumstances stated in the record and the peculiar state of law at the time the case was decided. The Court distinctly refused to regard it as authority for the position that a devise to one person, and if he died without issue, then over to another, would by implication raise an estate in favor of the children of the first taker, and the Court in this connection says: "Independently of the special features of this will, to which we have called attention, there are several cases in our reports which tend to show that on general principle this devise creates a base or qualified fee, and not an estate for life with contingent remainders." In the recent case of *Sumter v. Carter,* 115 Ga., 893, 60 L. R. A., 274 (which cites and approves *Fields v. Whitfield,* 101 N. C., 305, to which we will presently refer), the Court says: "The share of the testator's son was subject to be divested, upon the sole contingency of the son dying without leaving issue *in esse* at the life tenant's death, in favor of his sister and other devisees then living. This contingency never happened. Therefore, in consonance with the testator's intention and the soundest reason, there being no

devise to the children of the son, the latter's share became absolute and indefeasible upon his dying before the life tenant, leaving issue *in esse* at the life tenant's death, or upon his surviving the life tenant, with or without children, which supports the immediately preceding principle." And again: "This rule as to estates by implication applies with especial force to the case at bar, as there is no intent whatever on the part of the testator to give his son a lesser estate than a remainder in fee in his whole share, which was only to be divested in favor of the testator's other children and remaindermen upon the contingency hereinbefore explained, which never happened. The existence of the son's children at the time of the death of the life tenant, he having died before, simply fulfills one of the provisions in the testator's will whereby the son's remainder share, which was defeasibly vested, would then become indefeasible. If he had made no deed to his remainder interest, his children in life at the time of the death of the life tenant would have taken his then indefeasible remainder share by *inheritance* from him. But his deed on account of his leaving children *in esse* at the time of the death of the life tenant, which then made his remainder absolute, passed that absolute interest to his grantee."

We will now consider two cases decided in this Court in which the will of Lewis Whitfield was under construction, and which we think are by the clearest implication authorities for the defendant's contention in this case.

In *Isler v. Whitfield*, 61 N. C., 493, this Court construed the fifteenth item of the will in passing upon a title conveyed by Franklin Whitfield, who was the defendant in that case, with full covenants of title to the plaintiff Isler. Franklin had purchased the contingent interest of Hazard and Cicero Whitfield, his nephews, who were two of the first class of ulterior devisees, Lewis Whitfield, the other member of that

class, having died without issue.  At the time of the testator's death and also at the time of the conveyance from the defendant to the plaintiff there were grandchildren of the testator other than Hazard and Cicero Whitfield who constituted the second class of ulterior devisees.  The Court held that the defendant had not conveyed a good and indefeasible title to the plaintiff, and, therefore, had broken his covenant because it could not at that time be determined whether the fee would ultimately be vested in the first or second class of devisees, as the determination of that question depended upon the death of Franklin Whitfield without leaving heirs of his body or children.  The Court never once alluded to the fact that Franklin Whitfield had only a life-estate in the land devised to him and that upon his dying leaving children the land would go to them under the will as purchasers or remaindermen, and, therefore, that the title which he had conveyed in fee was defective and there was a consequent breach of the covenant, but the Court confined its decision to the question whether the first or second class of ulterior devisees would take, assuming, of course, that if Franklin died leaving heirs of his body, or children, the title would be good, and that the only event which could occur to divest his title was his dying without leaving children.  It was manifestly in the mind of the Court that if Franklin had acquired not only the interest of the first class of devisees, but also the interest of all persons who could possibly come within the second class at Franklin's death, the title conveyed by his deed would have been an indefeasible one, and yet we know as matter of law that it could not have been so if Franklin had only a life-estate, and his children, if he had any living at his death, would then take the fee under the will as purchasers or remaindermen.  We must come to this conclusion, otherwise we cannot account for the fact that the Court con-

fined its inquiry to the contingent estate of the second class of devisees.

If Franklin died leaving children the ulterior devises could not take effect, and, therefore, the estate acquired by his purchase and deed from the first class of ulterior devisees would be defective. His title conveyed by the deed in that event could only be sustained under the devise in the will to him, and not in that way unless he took a fee. The Court not having referred to the contingency that Franklin might die leaving children, it must be inferred from its silence in respect to that contingency that it was not thought to have any bearing upon the question involved, or that, in other words, if he died leaving children it would not prevent a good title from passing. It is clear, therefore, the Court thought if the contingency happened so as to exclude both classes of ulterior devisees, an indefeasible title in fee would have passed by the deed, and this could only be so if Franklin took a fee defeasible under the will, which had become absolute by his dying leaving children. This would exclude any possible right of the children as purchasers under the will. The whole argument in the case must have been based upon the assumption that Franklin took a defeasible fee, as the Court would not have overlooked such a contingency as his dying leaving issue if it could ultimately or eventually have any effect in deciding the question involved. If he had a life-estate, why discuss only the contingency of his dying without issue, for in the event of the failure of the ulterior devises his estate could last no longer than his life, and his deed, therefore, did not and could not pass a fee, although it purported to do so. It must surely be that such an important matter affecting the title in question would not have escaped the attention of the Court composed of such able jurists.

In *Fields v. Whitfield,* 101 N. C., 305, the Court passed upon the eighth item of the will, which, in our opinion, is

substantially the same as the fifteenth item, the only difference, if any, being that by the eighth item land is devised in the first instance to five grandsons, with the limitation that in the event of the death of any one of them without heirs of his body the land should be equally divided among certain granddaughters. We have seen that whether the first devise is made to one or several persons can make no difference in determining as to who will take, but only as to when the estate will vest and become absolute, or as to who will take under the ulterior devises. In *Fields v. Whitfield* one of the first class of devisees, who had acquired the interest of some of the others in that class, conveyed all of his interest in the property to the plaintiffs in fee. There is a provision in the eighth item of the will that each of the said persons should receive his proportionate part of the property when he arrived at the age of twenty-five years. One of the primary devisees who had conveyed his interest to the plaintiff grantor died leaving children. The Court held that the estate vested absolutely in the grantor under the devise and in those whose interest he had acquired in fee when they became of age, and consequently that the deed conveyed a good title as to those interests. How could this decision have been reached if the children of the grantor or the children of the devisee, who had died, had any interest, contingent or otherwise in the property, or, to state it differently, how could the decision have been made if the grantor and those whose interest he acquired took only a life-estate? The implication that they did not is irresistible. If the grantor in the deed had only a life-estate he could not, of course, convey a fee by his deed, not even a contingent fee.

We have discussed the last two cases at some length, as the suggestion that they are controlling authorities in this case was strenuously combatted by the plaintiffs' counsel.

In *Fairly v. Priest,* 56 N. C., 383, it appeared that the

testator by his will gave to each of his children a slave, and the residue, consisting of personal property, he gave to them in common, and provided that if either of them should die intestate and without heirs of his or her body the estate of the deceased child should be inherited by the survivors. The plaintiff's mother, who was one of the daughters of the testator, died leaving the plaintiff, who was illegitimate, as her only child, and the court held that if the plaintiff had been legitimate his mother's portion would not have been subject to the limitation over to the surviving brother and sister, but would have remained her absolute property, and of course would have devolved upon the personal representative and then have gone to the plaintiff as her next of kin. But the plaintiff being illegitimate, he could not at common law have been regarded as an heir of her body, that is, her issue or child, and she would have been deemed to have died without any such heir or child. The Court then held that as between the plaintiff and his mother, under our statute he was legitimate, and took the property as above indicated. It will be seen that by this ruling the mother took the property absolutely, and that the plaintiff acquired the property, not under the will or as purchaser, but by succession as the distributee or next of kin of his mother.

We are, therefore, of the opinion that Franklin's estate under the will was a fee, which was defeasible upon his dying without issue. A fee conditional at common law furnishes an analogy. Upon the birth of issue the tenant had power to alien in fee-simple. If he did so, the entire estate passed; otherwise it remained subject to the possibility of a reverter. *McDaniel v. McDaniel*, 58 N. C., 351.

The conclusion of the whole matter is that, upon reason and authority, the plaintiffs have never acquired any interest under the will, that being the only source of title claimed by them, and the defendants have a good and indefeasible title

as against the plaintiffs by virtue of the mesne conveyances connecting them with the deed from Franklin Whitfield, under which they claim the title.

The former decision of this Court was right, and the relief prayed for in the petition cannot, therefore, be granted.

Petition Dismissed.